C. and C. Beverage, Inc. v. Commissioner.
C. & C. Beverage, Inc. v. Commissioner
Docket Nos. 30787, 30788.
United States Tax Court
T.C. Memo 1954-95; 1954 Tax Ct. Memo LEXIS 150; 13 T.C.M. (CCH) 649; T.C.M. (RIA) 54201; July 12, 1954, Filed *150 (1) Petitioner, a corporation engaged in the wholesale distribution of beer, paid to its sole stockholder, who acted as the petitioner's president, treasurer, and sales manager, a salary of $12,000 per year. Held, the salary paid was reasonable compensation for services actually rendered. (2) Petitioner paid its president's dues in two country clubs and the Elk's Club, paid his expenses in entertaining customers and brewery representatives, and purchased football tickets for customers. Held, under Cohan v. Commissioner (C.A. 2), 39 Fed. (2d) 540, that petitioner expended $100 for entertaining which is deductible as an ordinary and necessary business expense. George E. H. Goodner, Esq., Munsey Building, Washington, D.C., and Dewey R. Roark, Jr., Esq., for the petitioner. *151 Everett E. Smith, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in petitioner's income taxes for the years ended October 31, 1946, 1947, and 1949, in the amounts of $1,731.90, $5,657.40, and $906.72, respectively. The proceedings were consolidated for hearing. The issues for decision are: (1) Whether, for the purpose of computing petitioner's taxable net income for the years ended October 31, 1946, 1947, and 1949, and for the purpose of computing petitioner's net operating loss carry-back for the year ended October 31, 1948, respondent was correct in disallowing as excessive and unreasonable $6,000 of the annual $12,000 salary paid petitioner's president and sole stockholder; and (2) Whether amounts allegedly expended for entertainment during the taxable year ended October 31, 1949, were ordinary and necessary business expenses of petitioner. Another issue involving the deductibility of travel expenses in the fiscal year ended October 31, 1949, was abandoned by petitioner at the hearing. Findings of Fact The petitioner is a corporation organized in 1937 under the laws of the State *152 of Tennessee with its principal place of business in Knoxville, Tennessee. It filed its income tax returns for the taxable years involved with the collector of internal revenue for the district of Tennessee. The business of petitioner is the distribution of beer at wholesale in and around Knoxville. Petitioner is the local distributor for "Miller's High Life" beer which is a premium beer. All of petitioner's stock, having an aggregate par value of $5,000, is owned by petitioner's president and treasurer, Fred F. Cooley (hereinafter referred to as Cooley). During the fiscal years ended October 31, 1946, 1947, 1948, and 1949, petitioner's officers and the amounts paid to each were as follows: Salary Paid - Fiscal Year
1946
1947
1948
1949
Fred F. Cooley, President and Treasurer
$12,000.00
$12,000.00
$12,000.00
$12,000.00
Mrs. Fred F. Cooley, Vice President
Mrs. Maude Walker, Asst. Secretary and
Treasurer [1]
337.50 [1]
Mrs. L. T. Crawford, Secretary [1]
300.00 [1]
1,562.50
2,100.00
2,100.00
*153 Cooley performed all executive and management functions for petitioner. He acted as general manager and sales manager. He did all of petitioner's bookkeeping and accounting work except the recording of daily receipts which was done by Mrs. Crawford. He made trips to the breweries and entertained their representatives when they came to Knoxville. He obtained loans from the bank in order to pay for shipments of beer, and personally endorsed petitioner's notes as required by the bank. The only other regular, paid employees of petitioner (except Mrs. Maude Walker in the fiscal year ending in 1946) were Mrs. Crawford, who performed routine office jobs, a man who checked and loaded the trucks, and driversalesmen. During the taxable years involved there was a shortage of premium beer such as "Miller's High Life." The breweries allocated their supply among their distributors. Petitioner was able to sell all of the premium beer it could obtain, and its main function during that period was to allocate the beer among its customers. The shortage created special problems for Cooley. He had to attempt to obtain more beer from the breweries and to maintain the good will of the retailers who were *154 not receiving all the beer they required. During this period Cooley obtained some "Tavern Beer" on which petitioner realized a profit in 1947 and 1948. When petitioner's competitors were able to obtain an increased supply of premium beer in 1948 and 1949, petitioner was no longer able to sell "Tavern Beer", which was not a premium beer. Cooley devoted two to three hours per day, seven days per week, to petitioner's business. He was also a member of a partnership which conducted a supermarket at Oak Ridge, Tennessee. The partnership employed a salaried manager and Cooley's only service to the business was to close the books at the end of each month. In 1946 and for a short while in 1947 another partnership consisting of Cooley and his wife engaged in the distribution of "Gem" beer. The gross sales of this partnership amounted to $63,688.85 in 1946 and $319.53 in 1947. Cooley spent most of his time playing golf. In addition to the compensation paid to its officers, petitioner paid in salaries and wages $19,561.23 for the year ended in 1946, $20,967.84 for the year ended in 1947, $15,254.30 for the year ended in 1948, and $14,109.06 for the year ended in 1949. Normally petitioner *155 paid to its driver-salesmen a commission of 10 cents per case. During the period here involved when there was a shortage of beer, in order to keep its sales organization intact, petitioner found it necessary to guarantee to its driver-salesmen a minimum of $65 per week. Fulfilling this guarantee contributed to petitioner's losses in the taxable years ended October 31, 1948, and 1949. During the taxable years ending in 1946 through 1949 petitioner's gross sales and net profits were as follows: Year
Sales
Net Profit
1946
$339,845.61
$10,409.80
1947
496,971.29
27,898.55
1948
229,162.67
(14,669.99)
1949
317,284.89
( 2,719.75)
Petitioner paid no dividends during the taxable years involved. Pinnacle Sales Company was the distributor for Schlitz beer in petitioner's territory. Petitioner and the Pinnacle Sales Company were comparable companies in the years involved, although the latter had a somewhat larger sales volume. Pinnacle Sales Company paid to its president, who set its policies, $6,000 per year. It paid to its secretary-treasurer, who acted as general manager and bookkeeper, $5,000 per year. It also paid an auditor $180 per year and paid its *156 sales manager $3,600 per year. Cooley, during the taxable years involved, performed for petitioner the functions of all the above officers and employees. In 1951, when sales increased, petitioner, at the suggestion of the Miller Brewery, hired a sales manager at a salary at $4,200 per year. During the taxable years involved $12,000 per year was reasonable compensation for the services actually rendered petitioner by Cooley. Respondent determined that the compensation paid by petitioner to Cooley, deducted in the amount of $12,000 per year, was excessive to the extent of $6,000, and increased petitioner's taxable income by that amount for the taxable years ended October 31, 1946, 1947, and 1949, and decrased by a like amount petitioner's net operating loss carry-back for the year ended October 31, 1948. During the year ended October 31, 1949, petitioner paid and charged to advertising the following expenses incurred by Cooley: Item
Amount
Elk's Club
$ 22.50
Cherokee Country Club
496.99
Holston Hills Country Club
108.00
University of Tennessee Athletic
Association
48.75
Total
$676.24
Respondent disallowed the deduction of all of the above items. *157 The amounts paid to the Elk's Club, the Cherokee Country Club, and the Holston Hills Country Club represent Cooley's dues in those organizations and to some extent his expenses in entertaining customers and brewery representatives in those clubs. All three clubs were customers of petitioner. The amount paid to the University of Tennessee Athletic Association purchased tickets to the football games for petitioner's customers. At least $100 of the above expenditures represents ordinary and necessary business expenses of petitioner. Petitioner reported net operating losses of $14,669.99 for the fiscal year ended in 1948 and $2,719.75 for the fiscal year ended in 1949. Petitioner applied for a net operating loss carry-back adjustment from the fiscal year ended in 1948 to the fiscal years ended in 1946 and 1947 and received a refund of all taxes paid for the fiscal year ended in 1946 and a refund of $1,797.47 for the fiscal year ended in 1947. Petitioner later applied for a carry-back adjustment from the fiscal year ended in 1949 to the fiscal year ended in 1947 and was refunded an additional $679.93. In determining deficiencies in petitioner's income tax liability for the fiscal years *158 ended in 1946 and 1947, the only net operating loss carry-back deduction allowed by respondent was $8,669.99 from the fiscal year ended in 1948 to the fiscal year ended in 1946. Opinion Petitioner paid to its president and sole stockholder a salary of $12,000 per year. Respondent determined that this amount was excessive and unreasonable to the extent of $6,000 and disallowed the deduction of that amount in determining petitioner's taxable income for the years ended October 31, 1946, 1947, and 1949, and in determining petitioner's net operating loss for the year ended October 31, 1948. Under section 23(a)(1)(A) of the Code a taxpayer is allowed to deduct from gross income "* * * a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *." It is well settled that the question of what constitutes, for the tax deduction here in issue, reasonable compensation to a specific officer of a corporation, is essentially a question of fact, to be determined by the peculiar facts and circumstances in each particular case." . We have found as a fact that the amount paid to Cooley *159 in the taxable years in question was reasonable compensation for services actually rendered. Where the compensation questioned is paid to the sole stockholder of the taxpayer corporation, the evidence should be scrutinized extremely carefully to determine whether the so-called compensation is not in reality a distribution of profits. However, if the taxpayer proves that the amount paid to its sole stockholder was reasonable compensation for services actually rendered, it is entitled to the deduction. Cf. . Respondent, in his Regulation 111, section 29.23 (a)-6, states that "It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances." Ordinarily, as no two companies are alike, this is difficult, if not impossible, to prove, and "* * * each corporate tub must more or less stand on its own bottom." , However, if this factor can be accurately established, we agree that it affords an accurate measure for determining what was reasonable *160 compensation for the services rendered. It was established by respondent's own witness that during the period in question the distributor of Schlitz beer in petitioner's territory, and a like enterprise in nearly every respect, paid $14,780 per year to its officers and employees for the same services performed for petitioner by Cooley for $12,000 per year. While by no means conclusive, we think this is very persuasive evidence that the compensation received by Cooley was reasonable. Cf. , affirming , certiorari denied . There are also additional factors supporting the reasonableness of the compensation paid to Cooley. He performed all executive and management functions for petitioner, including the duties of sales manager, bookkeeper, and auditor. He was solely responsible for creating, with a capital contribution of only $5,000, a business capable of realizing a net profit of $10,409.80 and $27,898.55 in the taxable years ended October 31, 1946, and 1947, respectively. He secured loans for petitioner and personally endorsed its notes. It is unlikely *161 that petitioner could have obtained a suitable replacement for Cooley for less than $12,000 per year. Respondent relies heavily upon the fact that Cooley devoted only half of each day to petitioner's business. But, as Judge Dobie stated in , "It may well be that a halftime president of a corporation, who, by virtue of exceptional training and ability, can make quick and accurate decisions, would merit higher compensation than a dull full-time president who lacked these desirable qualities." Furthermore, we do not agree with respondent that the evidence justifies the inference that petitioner's sole stockholder was attempting to drain off corporate profits in the guise of salary. Cf. , affirming . Cooley's good faith is borne out by the fact that his wife received no compensation for acting as the nominal vice-president of the corporation. Also, Cooley's compensation remained constant and did not vary with the amount of profits subject to distribution. It is true that petitioner sustained net operating losses in 1948 and *162 1949. But the losses were due entirely to a temporary shortage of beer over which Cooley had no control, and a corporation would not normally reduce its president's salary under such circumstances. It is, of course, significant that no dividends were paid by petitioner during the taxable years involved. Nevertheless, we are of the opinion that the amounts paid to Cooley represented reasonable compensation for services actually rendered and were not distributions of profits. The only other issue for decision is whether certain expenditures incurred by petitioner's president during the taxable year ended October 31, 1949, were deductible by petitioner as ordinary and necessary business expenses within the purview of section 23(a)(1)(A) of the Code. To be entitled to the deduction, petitioner must bring itself squarely within the provisions of the statute. . It must prove that the expenses were both ordinary and necessary and that they were primarily business rather than personal expenses. . To prove that the expenses were "ordinary", petitioner must show that such expenses were "common *163 or frequent" in the type of business in which it is engaged. . The expenditures in question include payments of $22.50 to the Elk's Club, $496.99 to the Cherokee Country Club, and $108.00 to the Holston Hills Country Club. These expenditures represent the cost of Cooley's dues and his expenses in entertaining customers and brewery representatives in the above clubs. The record does not disclose how much was spent for dues and how much was spent for entertainment. Ordinarily country club and Elk's Club dues are personal expenses, and petitioner has not demonstrated why they should not be so classified in the instant case. Petitioner argues that the clubs were its customers, that the clubs were utilized in entertaining customers and brewery representatives, and that it was good business for its president to join. However, in our opinion, this falls short of proving that paying the country club and Elk's Club dues of petitioner's president, who admittedly was an avid golfer and spent most of his time playing golf, presumably at one or the other of the two country clubs, was an ordinary and necessary expense of petitioner's trade or business. *164 An undisclosed portion of the payments to the above clubs was for the entertainment of customers and brewery representatives. Petitioner also expended $48.75 to purchase football tickets for its customers. Undoubtedly a certain amount of the entertaining of this type was ordinary and necessary in petitioner's business. The record does not disclose the amount expended for entertaining, but, bearing heavily upon the petitioner whose inexactitude is of its own making (cf. ), we have found as a fact that petitioner expended $100 for entertaining which is deductible as a business expense within the purview of section 23(a)(1)(A) of the Code. Decisions will be entered under Rule 50. Footnotes
1. As shown by petitioner's tax return for the fiscal year ending October 31, 1946. Petitioner's president testified that he paid Mrs. Crawford a total salary of $637.50 during this fiscal year. The record contains no explanation.↩